UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSE J. SHOMO,
                              Plaintiff,

v.                                                                    9:04-CV-0910
                                                                      (LEK)(GHL)

STATE OF NEW YORK DEPARTMENT OF
CORRECTIONAL SERVICES; CORRECTIONAL
MEDICAL SERVICES, INC.; *et al.*,
                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

JOSE J. SHOMO, 01-A-0080
   Plaintiff, *Pro Se*
Wende Correctional Facility
Box 1187
Alden, NY 14004

HON. ANDREW M. CUOMO                           DAVID M. FINKELSTEIN, ESQ.
Attorney General of the State of New York       Assistant Attorney General
   Counsel for State Defendants
The Capitol
Albany, NY 12224

THUILLEZ, FORD, GOLD, BUTLER & YOUNG, LLP    DEBRA J. YOUNG, ESQ.
   Counsel for Corporate Defendants              KELLY M. MONROE, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211-1715

GEORGE H. LOWE, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable

Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

72.3(c) of the Local Rules of Practice for the Northern District of New York.  In this *pro se* civil

rights action brought under 42 U.S.C. § 1983, Inmate Jose J. Shomo ("Plaintiff") alleges that,

between January 4, 2001, and July 22, 2004, while he was incarcerated by the New York State

Department of Correctional Services ("DOCS")–mostly at Coxsackie Correctional Facility

("Coxsackie C.F.") and Mohawk Correctional Facility ("Mohawk C.F.")–sixteen employees of

DOCS ("State Defendants")[1] and four employees of Correctional Medical Services, Inc.

("Corporate Defendants")[2] were deliberately indifferent to his serious medical needs and denied

him adequate accommodation for his disabilities, thus violating his rights under, *inter alia*, (1)

the Eighth Amendment to the United States Constitution, (2) the Americans with Disabilities Act

of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), (3) the Rehabilitative Act of 1973, 29 U.S.C. § 794

("RA"), and (4) various federal civil rights statutes, including 42 U.S.C. § 1981.  (Dkt. No. 1.)

Currently before the Court are the State Defendants' motion for summary judgment (Dkt. No. 72)

and the Corporate Defendants' motion for summary judgment (Dkt. No. 73).  For the reasons

discussed below, I recommend that both motions be granted.

---

[1]       Specifically, the sixteen individual State Defendants are as follows: (1) DOCS
Commissioner Glenn S. Goord; (2) DOCS Deputy Commissioner and Chief Medical Officer
Lester N. Wright; (3) DOCS Deputy Commissioner Stephen M. Bernardi; (4) DOCS Americans
with Disabilities Coordinator Donna M. Masterson; (5) Coxsackie C.F. Superintendent Gary H.
Filion; (6) Coxsackie C.F. Deputy Superintendent of Health Services Joan Smith; (7) Mohawk
C.F. Superintendent Kenneth S. Perlman, (8) Mohawk C.F. Deputy Superintendent of Health
Services Joan Rosado; (9) Mohawk C.F. Chief Medical Physician Y.D. Sharma; (10) Mohawk
C.F. Physician Zaki; (11) Mohawk C.F. Director of Nursing Judith Antonsen; (12) Mohawk C.F.
Nurse Administrator J. Nallenbach; (13) Mohawk C.F. Registered Nurse J. Harris; (14) Mohawk
C.F. Registered Nurse F. Rockhill; (15) Mohawk C.F. Occupational Therapist D. Connarton; and
(16) Mohawk C.F. Dietitian C. Onley.  (Dkt. No. 1.)

[2]       Specifically, the four individual Corporate Defendants are as follows: (1)
Coxsackie Regional Medical Unit Chief Physician Kirk Hochstetler; (2) Coxsackie Regional
Medical Unit Nurse Practitioner Patricia Gardella; (3) Coxsackie Regional Medical Unit Director
of Nursing Kathy Allen; and (4) Coxsackie Regional Medical Unit Nurse Administrator Valerie
Memheart.  (Dkt. No. 1.)

# I.     LEGAL STANDARD

## A.     Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[4]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).[5]  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[6] "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]

---

[3]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[4]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[5]     *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[6]     *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[7]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

When deciding a motion for summary judgment, the facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[8] and are not specifically controverted by the non-movant.[9]  Once a movant has filed a Rule 7.1 Statement, the opposing party must file a Rule 7.1 Response.[10]  This Rule 7.1 Response "shall mirror the movant's [Rule 7.1 Statement] by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a

---

[8]     *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . .  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. American Honda Motor Co., Inc.*, 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant.  To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed. R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . ."); Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

[9]     *See* N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[10]    *See* N.D.N.Y. L.R. 7.1(a)(3).

specific citation to the record where the factual issue arises."[11]  A district court has no duty to perform an independent review of the record to find proof of a factual dispute.[12]  In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[13]

Here, I note that Plaintiff's Complaint is notarized and contains a verification pursuant to 28 U.S.C. § 1746.  (Dkt. No. 1, Part 1, at 18.)  However, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or verified complaint) must, among other things, not be conclusory.[14]  An affidavit (or verified complaint) is conclusory if, for

---

[11]     (*Id.*)

[12]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[13]     *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[14]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

example, its assertions lack any supporting evidence or are too general.[15]  Moreover, "[a]n

affidavit must not present legal arguments."[16]  Finally, even where an affidavit (or verified

complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create

a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so

replete with inconsistencies and improbabilities that no reasonable juror would undertake the

suspension of disbelief necessary to credit the allegations made in the complaint."[17]

---

[15]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];
*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting
affidavit's conclusory statements that, in essence, asserted merely that there was a dispute
between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759
F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about
Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was
conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S.
829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit]
with the characters and plot line for a novel of intrigue rather than the concrete particulars which
would entitle him to a trial.").

[16]     N.D.N.Y. L.R. 7.1(a)(2).

[17]     *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005)
(affirming grant of summary judgment to defendants in part because plaintiff's testimony about
an alleged assault by police officers was "largely unsubstantiated by any other direct evidence"
and was "so replete with inconsistencies and improbabilities that no reasonable juror would
undertake the suspension of disbelief necessary to credit the allegations made in the complaint")
[citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45
(2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs'
deposition testimony regarding an alleged defect in a camera product line was, although specific,
"unsupported by documentary or other concrete evidence" and thus "simply not enough to create
a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789,
2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified
complaint, which recounted specific statements by defendants that they were violating his rights,
was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact
with regard to all but one of prisoner's claims, although verified complaint was sufficient to
create issue of fact with regard to prisoner's claim of retaliation against one defendant because

**B.      Revocation of Plaintiff's Special Status as *Pro Se* Civil Rights Litigant**

Imposed over the aforementioned burden-shifting framework is the generous perspective

with which the Court *generally* views a *pro se* civil rights plaintiff's papers.[18]  For example,

where a civil rights plaintiff is proceeding *pro se*, and the defendant has filed a dispositive

motion, *generally* the Court must construe the plaintiff's complaint and opposition papers

liberally so as to raise the strongest arguments that they suggest.[19]  Moreover, if the non-moving

party is proceeding *pro se*, he must be specifically advised of the potential consequences of

failing to respond to the movant's motion for summary judgment, before those consequences

---

retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose
testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia
Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was
insufficient evidence to oppose defendants' motion for summary judgment where that testimony
recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence
or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as
precedential authority but merely to show the case's subsequent history, in accordance with
Second Circuit's application of its Local Rule § 0.23).  *See*, *infra*, note 24 of this Report-
Recommendation.

[18]      *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil
rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights action);
*Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 467 (S.D.N.Y. 1998) (*pro se* civil rights action),
*aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000) (unpublished
decision).

[19]      *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002)
(motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)
(motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799
(W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

may be imposed.[20]  (I note that, here, Plaintiff was so advised by Defendants.)[21]  Having said that, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment."[22]

In addition, "[t]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or status that is normally afforded *pro se* litigants.[23]  Generally, the rationale for this revocation of special status (at least in the Second Circuit) is not that the *pro se* litigant should be punished but that his excessive litigiousness demonstrates his *experience*, the lack of which is the reason for conferring the special status upon *pro se* litigants in the first place.[24]  Moreover,

---

[20]     *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

[21]     (Dkt. No. 72, Part 1.)  Plaintiff apparently read the notice, since he subsequently requested (and was granted) two extensions of time in which to respond to Defendants' motion. (Dkt. Nos. 76, 78.)  Morever, I note that Plaintiff also received such notice several months before, from the defendants in another action.  *See Shomo v. State of New York*, 04-CV-0707 (N.D.N.Y.) (LEK/DEP) (prisoner civil rights action; Plaintiff specifically advised of consequences of failing to respond to Defendants' motion for summary judgment on 10/30/06).

[22]     *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord*, *Durran v. Selsky*, 251 F. Supp. 2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].  For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."  *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

[23]     *Smith v. Burge*, 03-CV-0955, 2006 WL 2805242, at *3 & n.3 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted].

[24]     *See, e.g.*, *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J., *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-

permitting experienced *pro se* litigants to retain their special status (despite their litigation

experience) would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his

opponents.[25]  As observed by Judge Irving R. Kaufman, of the Second Circuit, regarding an

---

1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J., *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994); *Edwards v. Selsky*, 04-CV-1054, 2007 WL 748442, at *2-3 (N.D.N.Y. March 6, 2007) (Mordue, C.J., adopting Report-Recommendation of Lowe, M.J.); *Rolle v. Garcia*, 04-CV-0312, 2007 WL 672679, at *4 (N.D.N.Y. Feb. 28, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.); *Mora v. Bockelmann*, 03-CV-1217, 2007 WL 603410, at *4 (N.D.N.Y. Feb. 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.); *Brown v. Goord*, 04-CV-0785, 2007 WL 607396, at *2-3 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Mitchell v. Harriman*, 04-CV-0937, 2007 WL 499619, at *3 (N.D.N.Y. Feb. 13, 2007) (Sharpe, J., adopting Report-Recommendation of Homer, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 WL 951447, at *3-4 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting Report-Recommendation of Treece, M.J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean*, 204 F.R.D. 251, 257 & n.5 (S.D.N.Y. 2001); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta*, 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

[25]     *Edwards*, 2007 WL 748442, at *2; *Sledge*, 2007 WL 951447, at *3; *see also Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); Jessica Case, "Pro se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev.* 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro se* litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

active *pro se* litigant nearly 45 years ago:

> He comes before this Court wearing the cloak of a *pro se* applicant, and seeks to extract from us the solicitude ordinarily afforded one appearing without counsel.  But this should not shield him from rebuke when merited.  He is an intelligent, able and sophisticated litigant, who is no stranger to this Court, having appeared frequently in his own behalf both in the District Court and the Court of Appeals.  We would expect that one possessed of his background would be conscious of the outer limits of forceful advocacy and fully aware when his acts transgress those limits.  Moreover, we are not to be manipulated by resourceful but meritless moves . . . . [which] serve only to distract us from important judicial business.[26]

Courts relying on the "experience" rationale for revoking a *pro se* litigant's special status look at a variety of factors in assessing whether or not the *pro se* litigant is experienced.  Most often, these factors include (1) the number of previous federal court actions filed, (2) the number of previous federal court appeals filed, (3) the number of previous state court actions filed, (4) the number of previous state court appeals filed, and (5) the recency or simultaneity of the actions and/or appeals.[27]

There is, of course, no formula for determining "How many is too many?"  However, *generally*, if a *pro se* litigant has filed a dozen or more actions and/or appeals before the date of the decision in question, it is quite possible that he will be deemed to be "experienced."[28]

---

[26]      *Raitport v. Chem. Bank*, 74 F.R.D. 128, 133 (S.D.N.Y. 1977) [citing *Ackert v. Bryan*, No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring)].

[27]      *See, e.g., Eggersdorf*, 8 F. App'x at 143; *Gummerson*, 201 F.3d at *2; *Flynn*, 32 F.3d at 31; *Frawley*, 2006 WL 1742738, at *3 & n.2; *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10; *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3; *Dean*, 204 F.R.D. at 257; *Santiago*, 91 F. Supp. 2d at 670; *McGann*, 1999 WL 173596, at *2, 8-10; *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3; *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1.

[28]      *See, e.g., Eggersdorf*, 8 F. App'x at 143 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had ***twelve*** simultaneously pending lawsuits in

Granted, there are some cases revoking the special status of a *pro se* litigant who has filed *fewer*

than a dozen cases.[29]  However, there appear to be *more* cases refusing to revoke the special

status of a *pro se* litigant who has filed fewer than a dozen cases.[30]

---

Northern District alone); *Gummerson*, 201 F.3d at *2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had ***twelve*** simultaneously pending lawsuits in Northern District alone); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed ***twenty*** lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed ***twenty*** lawsuits in Northern District alone). Interestingly, this *de facto* "rule of twelve" is consistent with the California Code of Civil Procedure, which declines to extend a reduction in small-claims-court filing fees to those litigants who have filed more than 12 small-claims lawsuits in the state within the previous 12 months.  *See* Cal. Civ. Proc. § 116.230 (2006).

[29]      *See, e.g.*, *Santiago*, 91 F. Supp. 2d at 670 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had ***ten*** lawsuits pending in Southern District); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (denying leniency to *pro se* civil rights inmate who had previously filed ***eight*** federal court actions or appeals); *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that inmate had filed ***seven*** previous lawsuits against prison officials); *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had ***seven*** lawsuits pending in Western District).

[30]      *See, e.g.*, *McEachin v. Faruki*, 03-CV-1442, 2006 WL 721570, at *2 n.3 (N.D.N.Y. March 20, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed ***eleven*** other federal lawsuits since 2000); *Pritchett v. Portoundo*, 03-CV-0378, 2005 WL 2179398, at *2 n.3 (N.D.N.Y. Sept. 9, 2005) (refusing to deny leniency to *pro se* civil rights inmate who had filed ***eight*** other federal lawsuits since 1996); *Burke v. Seitz*, 01-CV-1396, 2006 WL 383513, at *2 n.5 (N.D.N.Y. Feb. 13, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed ***six*** other federal lawsuits in previous nine years); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *3 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (refusing to deny leniency to *pro se* civil rights inmate who had previously filed ***five*** actions or appeals in federal or state court); *Smith*, 2006 WL 2805242, at *3 & n.4 (refusing to deny leniency to *pro se* civil rights inmate based on his filing of ***five*** other lawsuits); *Abbas v. Senkowski*, 03-CV-0476, 2005 WL 2179426, at *2 n.4 (N.D.N.Y. Sept. 9, 2005) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed ***three*** other federal actions since 1997); *Loren v. Feerick*, 97-CV-3975, 1997 WL 441939, at *1 & n.9 (S.D.N.Y. Aug. 6, 1997) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed

One reason for this array of cases is that, in determining whether or not a *pro se* litigant is

"experienced," courts sometimes consider additional factors, such as (1) the quality of the *pro se*

litigant's submissions to the Court (e.g., whether they are typed, cogent, supported by applicable

affidavits, exhibits, and/or memoranda of law, etc),[31] (2) whether or not the *pro se* litigant has

been victorious (or partially victorious) in any of his previous actions or appeals,[32] and (3)

whether or not the *pro se* litigant has received sufficient formal legal training to familiarize him

with legal procedure and terminology.[33]

---

***three*** previous actions in state court regarding current matter, and two previous actions in district court regarding current matter).

    [31]    *See, e.g., Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that, among other things, "with regard to the current action, . . . the motion papers that [p]laintiff has submitted over the past several years have often been fairly good–being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc.").

    [32]    *See, e.g., Saudners*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had settled two of his previous six federal court actions, receiving $25,000 in exchange for his agreement to voluntarily dismiss the actions, and the fact that some of plaintiff's motions in his many actions have been granted); *Ab v. Sekendur*, 03-CV-4723, 2004 WL 2434220, at *5 (N.D. Ill. Oct. 28, 2004) (considering, during decision of whether *pro se* plaintiff should be denied leniency normally afforded inexperienced *pro se* litigants, fact that "[plaintiff's] has successfully applied for and received . . . [a] patent, and as the record in this case indicates, he engaged in lengthy business negotiations with Anoto and various other corporations").

    [33]    *See, e.g., Walker v. Suburban Hosp. Ass'n*, No. 90-1506, 1991 U.S. App. LEXIS 4049, at *3, n.2 (4th Cir. March 13, 1991) ("Walker us not due the lenient treatment accorded pro se litigants.  Walker has . . . a law degree. . . .  Certainly, the policies underlying the Court's admonitions to accord pro se litigants an understanding view of their pleadings and conduct do not have force in this context."); *Heimbaugh v. San Francisco*, 591 F. Supp. 1573, 1577 (N.D. Cal. 1984) ("While plaintiff appears [pro se], he is schooled in the law, having recently completed law school . . . .  There is every reason to hold him to the certification he made by signing the pleadings he has filed in this action."); *Pham v. U.S.*, 317 F.3d 178, 186-188 (2d Cir. 2003) (relying on fact that *pro se* prisoner was "not trained in the law," and that he was "untutored," when explaining reason for extending him special solicitude under the

Here, Plaintiff has filed at least 10 other federal and state court actions and appeals.[34]

Eight of those actions or appeals involved claims of torts or civil rights violations arising from

the conditions of his imprisonment.[35]  Moreover, in two of those actions, Plaintiff faced a motion

---

circumstances); *Iwachiw v. N.Y. City Bd. of Educ.*, 2007 U.S. Dist. LEXIS 8040, at *12 (E.D.N.Y. Feb. 5, 2007) ("This policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.") [internal quotation marks and citations omitted]; *cf.* John C. Rothermich, "Ethical and Procedural Implications of "Ghostwriting" for *Pro Se* Litigants: Toward Increased Access to Civil Justice," 67 *Fordham L. Rev.* 2687, 2697 (Apr. 1999) (arguing that, when the papers of a *pro se* litigant are "ghostwritten" by a legal assistant, the "special leniency" normally afforded to *pro se* litigants is "unwarranted") [citations omitted], *accord*, *Saunders*, 2006 WL 3051792, at *2, n.15.

[34]     Specifically, those federal and state court actions and appeals are as follows: (1) *Shomo v. State of New York*, 06-CV-0353 (W.D.N.Y.) (prisoner civil rights action; Order filed 11/2/06 dismissing Plaintiff's Complaint for, *inter alia*, failure to state a claim, and requiring him to file Amended Complaint; notice of interlocutory appeal filed on 11/21/06 regarding aforementioned Order); (2) *Shomo v. State of New York*, Docket No. 06-5434-PR (2d Cir.) (interlocutory appeal from dismissal of prisoner civil rights action); (3) *Shomo v. Zon*, 05-CV-10337 (S.D.N.Y.) (habeas corpus proceeding; currently pending); (4) *Shomo v. State of New York*, 04-CV-0707 (N.D.N.Y.) (LEK/DEP) (prisoner civil rights action; currently pending); (5) *Shomo v. Maher*, 04-CV-4149 (S.D.N.Y.) (habeas corpus proceeding; action dismissed, and certificate of appealability denied, on 3/31/05); (6) *Shomo v. Myers*, 03-CV-10213, 2007 U.S. Dist. LEXIS 2608 (S.D.N.Y. Jan. 10, 2007) (prisoner civil rights action; original Complaint dismissed for failure to state claim by Order filed 4/6/05 with partial leave to replead; defendants' motion for summary judgment granted on 1/10/07, and Amended Complaint dismissed; notice of appeal later filed on 1/24/07); (7) *Shomo v. City of New York*, Docket No. 07-1208-CV (2d Cir.) (appeal from dismissal of prisoner civil rights action); (8) *Shomo v. Zon*, 827 N.Y.S.2d 391 (N.Y. App. Div., 4th Dept., 2006) (Article 78 proceeding seeking review of denial of inmate grievance; proceeding transferred from N.Y. Sup. Ct., Erie County; petition denied on 12/22/06); (9) *Shomo v. New York City D.O.C.*, Index No. 6516/1996 (N.Y. Sup. Ct., Bronx County) (action sounding in tort; currently pending); (10) *Shomo v. State of New York*, Index No. 2007-013-008, Claim No. 112049 (N.Y. Ct. Cl.) (claims of negligent medical care, and cruel and unusual punishment as a result of misdiagnosed medical condition; currently pending).

[35]     *Id.*

for summary judgment, as he does here.[36]  Perhaps because of this considerable litigation experience, Plaintiff has acquired a familiarity with court procedures–a fact that was recently noted by one judge.[37]  For example, in the current case, Plaintiff has demonstrated sufficient sophistication to file a motion to proceed *in forma pauperis*, a motion for a preliminary injunction, a motion for reconsideration, motion to extend various discovery deadlines, a motion to compel discovery, two motions to reopen discovery, and two motions for extensions of time to respond to motions filed by Defendants.[38]  This familiarity with court procedures is not surprising to me, given that Plaintiff has testified that he is a "paralegal," and that he "teach[es] [a] legal resources course to other inmates."[39]  Perhaps because of this training and experience, Plaintiff's numerous filings in this action have been quite good, often being typed, organized, cogent, and/or supported by declarations.[40]  As a result of Plaintiff's skills of advocacy, the Court has granted his motion to proceed *in forma pauperis*, his motion to extend various discovery deadlines in the action's Pretrial Scheduling Order, his two motions for extensions of time to respond to

---

[36]     *See Shomo v. State of New York*, 04-CV-0707 (N.D.N.Y.) (LEK/DEP) (prisoner civil rights action; defendants' motion for summary judgment filed on 10/30/06; Plaintiff responded to motion for summary judgment on 11/20/06); *Shomo v. City of New York*, 03-CV-10213 (S.D.N.Y.) (prisoner civil rights action; defendants' motion for summary judgment filed on 10/5/06; Order filed on 1/10/07, granting motion for summary judgment).

[37]     *See Shomo v. State of New York*, Index No. 2007-013-008, Claim No. 112049, Decision at 1 (N.Y. Ct. Cl., filed March 30, 2007) (Patti, J.) ("[Plaintiff] seems well-acquainted . . . with the filing requirements of [the court] . . . .").

[38]     (Dkt. Nos. 2, 4, 11, 49, 52, 69, 75, 76, 78.)

[39]     (Dkt. No. 72, Part 4, at 155 [Ex. A to Finkelstein Decl., attaching transcript of Plf.'s deposition].)

[40]     (*See, e.g.*, Dkt. Nos. 1, 2, 3, 4, 7, 10, 11, 49, 52, 69, 75, 76, 78.)

Defendants' motion for summary judgment, and part of his motion to compel discovery.[41]

Under the circumstances, I find that Plaintiff's special status as a *pro se* litigant should be revoked for the remainder of this action. Again, continuing to afford him such special status would be unnecessary (and unfairly prejudicial to Defendants).[42]

## II.   ANALYSIS

As an initial matter, Plaintiff has requested to file a sur-reply with regard to Defendants' motions. (*See* Dkt. No. 88.) The State Defendants have opposed that request. (*See* Dkt. No. 87.) In light of the Local Rule generally prohibiting the filing of sur-replies (*see* L.R. 7.1[b][1]), the minimal value of Plaintiff's sur-reply (*see* Dkt. No. 88), and the revocation of Plaintiff's special status as a *pro se* civil rights litigant (*see*, *supra*, Part I.B. of this Report-Recommendation), I deny Plaintiff's request. Accordingly, I direct the Clerk's Office to strike from the docket pages 2 through 5 of Plaintiff's letter request, which attaches his proposed sur-reply. (Dkt. No. 88.)

### A.   State Defendants' Motion for Summary Judgment

The State Defendants argue that Plaintiff's claims against them should be dismissed for four reasons: (1) issue preclusion based on two previous court decisions regarding the claims at issue in this litigation; (2) a failure to state, or establish, a claim under the Eighth Amendment; (3) a failure to state a claim under the ADA or the RA; and (4) a failure to state a claim under the

---

[41]   (Dkt. Nos. 6, 49, 66, 76, 78.)

[42]   I note that it appears that, as of the current date, Plaintiff has earned two strikes for purposes of 28 U.S.C. 1915's "three strikes" rule. *See Shomo v. State of New York*, 06-CV-0353 Memorandum and Order at 5-9 (W.D.N.Y., filed Nov. 2, 2006) (dismissing Plaintiff's Complaint for, *inter alia*, failure to state a claim, and requiring him to file Amended Complaint); *Shomo v. City of New York*, 03-CV-10213, 2005 WL 756834, at *7-12 (S.D.N.Y. Apr. 4, 2005) (dismissing original Complaint for failure to state claim, with partial leave to replead).

Civil Rights Act.  (*See generally* Dkt. No. 72, Part 17 [State Defs.' Mem. of Law].)

      **1.**      **Issue Preclusion**

The State Defendants argue that Plaintiff is precluded, or "collaterally estopped," from re-litigating the issues on which his Complaint is based because those issues were previously litigated and decided in *Shomo v. Zon*, 827 N.Y.S.2d 391 (N.Y. App. Div., 4th Dept., 2006) and *Shomo v. Myers*, 03-CV-10213, 2007 U.S. Dist. LEXIS 2608 (S.D.N.Y. Jan. 10, 2007).[43]

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment."  *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) [citations omitted].  "Four elements must be met for collateral estoppel to apply: (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been full and fair opportunity for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits."  *Central Hudson*, 56 F.3d at 368 [citations and internal quotation marks omitted].

Of these four elements, the only one placed at issue by Plaintiff's response papers is the first element: whether the issues of both proceedings are identical.  The State Defendants are correct when they state that (1) factual questions (and not simply questions of law) may constitute "issues" for purposes of the aforementioned collateral estoppel analysis, (2) issue preclusion may apply even though "the events involved in the two proceedings took place at different times (or the question was one of [someone's] . . . condition [occurring] at different

---

[43]      (Dkt. No. 72, Part 17, at 5-13 [State Defs.' Mem. of Law].)

time periods)," (3) among the factors that should be considered when deciding whether two proceedings raise the same "issue" (for purposes of collateral estoppel) are whether there is a "substantial overlap" between the evidence and/or arguments advanced in the two proceedings, and (4) the party seeking to assert collateral estoppel in a proceeding need not have been involved in the prior proceeding.[44]

I have carefully read the decisions in *Shomo v. Zon*, 827 N.Y.S.2d 391 (N.Y. App. Div., 4th Dept., 2006) and *Shomo v. Myers*, 03-CV-10213, 2007 U.S. Dist. LEXIS 2608 (S.D.N.Y. Jan. 10, 2007). I find that the Fourth Department's decision in *Shomo v. Zon* is simply too short to enable me to discern whether or not any of the issues presented in that proceeding are the same as any of the issues presented in the current proceeding.[45] However, the Southern District's decision in *Shomo v. Myers* is far more lengthy and helpful.

In *Shomo v. Myers*, one of the issues was whether the chief physician at the City of New York Department of Corrections acted with the required state of mind for a deliberate indifference claim under the Eighth Amendment (i.e., criminal recklessness) when, between September 26, 2000 (before which any conduct was non-actionable due to the applicable statute

---

[44]      (Dkt. No. 72, Part 17, at 7 [State Defs.' Mem. of Law].)

[45]      Granted, I do know what *allegations* Plaintiff was asserting in that proceeding, since the State Defendants were helpful enough to provide Plaintiff's Complaint in that proceeding. (Dkt. No. 72, Part 6 [Ex. C to Finkelstein Decl.].) However, that information would be relevant only to a Rule 12(b)(6) failure-to-state-a-claim analysis, not to a Rule 56 genuine-issue-of-material-fact analysis. What I would need to know to determine the preclusive effect of *Shomo v. Zon* on the current proceeding would be what *evidence* the Fourth Department considered in reaching its conclusion in *Shomo v. Zon*. The Fourth Department does not describe that evidence in its decision, stating only, "The evidence supports respondent's determination that petitioner's medical needs are being met, and petitioner failed to establish that respondent is deliberately indifferent to serious medical needs of petitioner." *Shomo v. Zon*, 827 N.Y.S.2d 391, 391 (N.Y. App. Div., 4th Dept., 2006).

of limitations) and December 24, 2003 (the date of filing of Plaintiff's Complaint in the action),
she (1) knew, or was chargeable with knowledge, of Plaintiff's complaints that he needed
assistance performing activities of daily living due to his chronic nervous system disorder, but
she (2) declined to transfer Plaintiff to a hospital facility that could provide him with such
assistance, because (3) there existed both (a) medical reports and notations recommending that
Plaintiff receive assistance with activities of daily living, and (b) medical reports and notations
stating that Plaintiff did not require such assistance, (4) "[f]aced with a body of conflicting
professional judgments, [she], in her capacity as Chief Physician, was compelled to make a
professional judgment of her own," and "[s]he determined that Plaintiff was sufficiently capable
of performing activities of daily living, and that transfer to a hospital facility was unnecessary."
*Shomo*, 2007 U.S. Dist. LEXIS 2608, at *12-14.

  This issue appears very similar to an issue in the current action: whether Defendants
Sharma (Mohawk C.F. Chief Medical Physician), Zaki (Mohawk C.F. Physician), Rosado
(Mohawk C.F. Deputy Superintendent of Health Services), Antonsen (Mohawk C.F. Director of
Nursing), Nallenbach (Mohawk C.F. Nurse Administrator), Harris (Mohawk C.F. Registered
Nurse J. Harris), Rockhill (Mohawk C.F. Registered Nurse F. Rockhill), Connarton (Mohawk
C.F. Occupational Therapist D. Connarton), Smith (Coxsackie C.F. Deputy Superintendent of
Health Services), and Wright (DOCS Deputy Commissioner and Chief Medical Officer) acted
with the required state of mind for a deliberate indifference claim under the Eighth Amendment
(i.e., criminal recklessness) when, between January 4, 2001, and July 22, 2004, they (1) knew, or
were chargeable with knowledge, of Plaintiff's complaints that he needed assistance performing
activities of daily living due to his chronic nervous system disorder, but (2) they declined to

provide him with such assistance (either by transferring Plaintiff to another facility or otherwise), because (3) there existed both (a) medical reports and notations recommending that Plaintiff receive assistance with activities of daily living, and (b) medical reports and notations stating that Plaintiff did not require such assistance, (4) faced with a body of conflicting professional judgments, they, in their various medical capacities, were compelled to make a professional judgment of their own, and they determined that Plaintiff was sufficiently capable of performing some activities of daily living, and that assistance with further such activities (or a prison transfer) was unnecessary.  (*See generally* Dkt. No. 1 [Plf.'s Compl.]; Dkt. No. 72, Part 2 [State Defs.' Rule 7.1 Statement]; Dkt. No. 79, Part 2 [Plf.'s Rule 7.1 Response].)

If the aforementioned medical professionals (i.e., Sharma, Zaki, Rosado, Antonsen, Nallenbach, Harris, Rockhill, Connarton, Smith and Wright) did not, as a matter of law, possess the requisite state of mind, it is difficult for me to imagine circumstances under which any of the other State Defendants (i.e., Goord, Bernardi, Masterson, Filion, Perlman, Onley) could have possessed such a state of mind, given the fact that they were relying on the professional judgment of those individuals.

The only question that might give me some pause is whether the medical records considered in *Shomo v. Myers* were substantially similar to the medical records submitted by the parties on Defendants' motions in the current action.  After carefully reading *Shomo v. Myers*, and carefully reviewing the medical records submitted by the parties in the current action, I find that the medical records considered in *Shomo v. Myers* were, indeed, substantially similar to the medical records submitted by the parties on Defendants' motions in the current action.

For example, in *Shomo v. Myers*, the medical records supporting Plaintiff's request for

assistance with activities of daily living included the following: (1) a September 25, 1999,

medical opinion of Dr. Harjinder Bhatti that Plaintiff needed such assistance; (2) an October 9,

1999, concurring opinion of Physician's Assistant Doni Pitchford.  *Shomo*, 2007 U.S. Dist.

LEXIS 2608, at *14.  The medical records undermining Plaintiff's request for assistance with

activities of daily living included the following: (1) an October 13, 1999, determination of a

neurologist at Bellevue Hospital that Plaintiff was able to perform activities of daily living, and

did not need assistance with such activities; and (2) the notation of prison medical staff on or

about October 13, 1999, that Plaintiff was able to eat and use the toilet without assistance.  *Id*. at

*14-15.

Moreover, in *Shomo v. Myers*, several medical records existed that both supported and

undermined Plaintiff's request for assistance with activities of daily living.  *Id*. at *17-20.  For

example, a medical record from January 26, 2000, reflected the findings of two physicians at

Bellevue Hospital that Plaintiff's "[e]lectrodiagnostic studies are consistent with the presence of

left brachial plexopathy" and the possibility of "a concurrent reflex sympathetic dystrophy."  *Id*.

at *17-18.  However, that medical record did not indicate that Plaintiff suffered from paralysis,

and did not prescribe any particular mode of care for Plaintiff, returning him to the general

population.  *Id*. at *17-20.  Similarly, reports existed from March and April of 2000 indicating

that Dr. Appel prescribed physical therapy and occupational therapy for Plaintiff, but did not

prescribe that he receive any assistance with activities of daily living.  *Id*. at *20.

Here, the record on Defendants' motions for summary judgment contains approximately

1,572 pages of Plaintiff's medical records.  (*See* Dkt. No. 72, Part 9 (Ex. A to Howard Decl.,

containing 1,523 pages of medical records) [filed under seal]; Dkt. No. 73, Parts 4-5 [Exs. E and

F to Young Decl., attaching 18 pages of medical records]; Dkt. No. 79, Part 3, Exs. 27, 31, 33, 34

[Plaintiff's Response Papers, containing 31 pages of medical records].)  Among these records are

the following: (1) the January 26, 2000, medical record from Bellevue Hospital (which, as stated

earlier, does not indicate that Plaintiff suffered from paralysis, and does not prescribe any

particular mode of care for Plaintiff, returning him to the general population); and (2) the March

and April 2000 reports from Dr. Appel (which, note that Plaintiff "again requests help with

ADL," but, as stated earlier, do not prescribe that Plaintiff receive any assistance with activities

of daily living, only physical therapy and occupational therapy).  (Dkt. No. 79, Part 3, Ex. 31

[Plaintiff's Response Papers].)

Simply stated, I find that the issue of whether the State Defendants acted with criminal

recklessness (when, faced with a body of conflicting medical reports, they decided, in their

professional judgments, or in reliance on medical professionals exercising their professional

judgments, that Plaintiff did not need further assistance with performing his activities of daily

living) was actually litigated and decided in *Shomo v. Myers*.

Plaintiff's arguments to the contrary are not persuasive.  Plaintiff argues that issue

preclusion is not appropriate under the circumstances because (1) the issues addressed in *Shomo*

*v. Zon*, 827 N.Y.S.2d 391 (N.Y. App. Div., 4th Dept., 2006) and *Shomo v. Myers*, 03-CV-10213,

2007 U.S. Dist. LEXIS 2608 (S.D.N.Y. Jan. 10, 2007) were different than the issues facing the

Court in the current action, because the location and nature of the incidents giving rise to

Plaintiff's claims in those actions are different than the location and nature of the incidents in the

current action, (2) the ruling in *Shomo v. Myers* regarding whether Plaintiff had a *sufficiently*

*serious medical need* for purposes of the Eighth Amendment was actually resolved in Plaintiff's

21

favor (i.e., the Southern District found that a question of fact existed regarding whether Plaintiff

was unable to perform activities of daily living to such an extent that his condition constituted a

serious medical need), (3) the ruling in *Shomo v. Myers* may not be given preclusive effect herein

because that ruling was an order on a motion for summary judgment and Second Circuit Rule

0.23 states that "[r]ulings by summary order do not have preclusive effect," and (4) given the

uncertainty surrounding Plaintiff's medical condition, the Court should reserve decision on

Defendants' motion until Plaintiff has been evaluated by a qualified neurologist.[46]

  I reject Plaintiff's first argument because (1) as I stated earlier, issue preclusion may apply

even though the events involved in the two proceedings took place at different times, and (2) in

any event, I find that the facts giving rise to Plaintiff's deliberate indifference claim in *Shomo v.*

*Myers* were substantially similar to the events giving rise to Plaintiff's deliberate indifference

claim in the current proceeding.

  I reject Plaintiff's second argument because, in the Court's resolution of the State

Defendants' motion for summary judgment, it does not matter whether or not the Southern

District found a question of fact with regard to whether Plaintiff had a sufficiently serious

medical condition for purposes of the Eighth Amendment.  This is because, for the sake of

argument, I am assuming, in this Report-Recommendation, that Plaintiff's medical condition was

sufficiently serious for purposes of the Eighth Amendment.  *See*, *infra*, Part II.A.2. of this

Report-Recommendation.  Rather, the issue before the Court, at least with respect to the State

Defendants' collateral estoppel argument, is whether or not the Southern District's ruling in

*Shomo v. Myers* with regard to the defendants' state of mind (regarding that condition) should be

---

   [46]   (Dkt. No. 79, Part 1, at 4-8 [Plf.'s Mem. of Law].)

given preclusive effect in the current proceeding (and I have found that the ruling should be given such effect).

I reject Plaintiff's third argument because that argument is premised on a misreading of Section 0.23 of the Local Rules of the Second Circuit.  Plaintiff reads that Local Rule as referring to "summary judgment orders."  In fact, that rule refers to "summary orders"–quite a different thing.  *See* Local Rules of the Second Circuit § 0.23(a) ("[I]n those cases in which decision is unanimous and each judge of the panel believes that no jurisprudential purpose would be served by an opinion (i.e., a ruling having precedential effect), the ruling may be by summary order instead of by opinion.").  Furthermore, the fact that the Southern District's decision was published on Lexis and Westlaw only (rather than being published also in a federal reporter)[47] is of no consequence to the issue of whether the decision may be given preclusive effect.  This is because, among other reasons, the Southern District's decision was not a "summary order," nor was it issued by the Second Circuit.

Finally, I reject Plaintiff's fourth argument for a number of reasons.  It is not the function of an impartial judiciary to *sua sponte* conduct discovery for a party (such as an evaluation of Plaintiff by a neurologist) in order to eliminate differences of medical opinion.  If Plaintiff is requesting an Order staying the pending motions for summary judgment, and permitting limited discovery in the form of an examination of a neurologist, there is a procedure available for making such a request.  *See*, *e.g.*, Fed. R. Civ. P. 56(f), 26(b)(1), 16(b).  I will set aside the fact that Plaintiff has not even bothered to try to follow that procedure, despite his considerable

---

[47]     *See Shomo v. Myers*, 03-CV-10213, 2007 U.S. Dist. LEXIS 2608, 2007 WL 102108 (S.D.N.Y. Jan. 10, 2007).

litigation experience and familiarity with court procedures.  The more serious defect with

Plaintiff's argument is that he has not shown cause in support of such an Order.  It is clear from

the 1,523 pages of medical records before the Court that, since the onset of his injury in 1994,

Plaintiff has been examined by several neurologists, who have formed differing opinions

regarding Plaintiff's condition.  I have no reason to believe that another such examination would

yield a diagnosis that would somehow reconcile or eliminate the differences between these

medical opinions.  Nor can I imagine how such an examination would even be material to the

state-of-mind issue presented by the State Defendants' motion, since the neurologist's findings

would occur years after the period of time in question, i.e., January 2001 to and July 2004 (and

thus could not possibly have been considered by the State Defendants' when they made their

respective professional judgments).  Moreover, as a practical matter, I wonder who Plaintiff

proposes would pay for an "independent examination" by a "qualified neurologist," as Plaintiff

requests.  Succinctly stated, Plaintiff has been given sufficient opportunity to conduct discovery

in this matter, as the Court implicitly ruled when it denied his request to re-open discovery on

February 26, 2007.  (Dkt. No. 69.)[48]

    As a result, I recommend that the Court dismiss Plaintiff's claim against the State

Defendants under the Eighth Amendment on the ground that the issue of whether the State

Defendants acted with criminal recklessness (when, faced with a body of conflicting medical

reports, they decided, in their professional judgments, or in reliance on medical professionals

exercising their professional judgments, that Plaintiff did not need further assistance with

---

[48]    I note that, on February 9, 2007, the Court partially granted Plaintiff's request for
an order compelling further discovery from Defendants.  (Dkt. No. 66.)

performing his activities of daily living) was actually litigated and decided in *Shomo v. Myers*, 03-CV-10213, 2007 U.S. Dist. LEXIS 2608 (S.D.N.Y. Jan. 10, 2007).

### 2.    Eighth Amendment Claim

The State Defendants next argue that Plaintiff's Eighth Amendment deliberate indifference claim fails as a matter of law because (1) Plaintiff fails to allege facts indicating, or adduce evidence establishing, that his medical condition was sufficiently serious for purposes of the Eighth Amendment, or that Defendants acted with the requisite state of mind with regard to that medical condition, (2) Plaintiff fails to allege facts indicating, or adduce evidence establishing, that Defendants Goord, Wright, Bernardi, Masterson, Filion, Perlman, Smith, Rosado, and Rockhill–all but the last of whom were all supervisory officials–were personally involved in constitutional violations alleged, (3) Plaintiff's suffering was caused not by Defendants' actions but by Plaintiff's own systematic noncompliance with the health care plan established for him by the medical staff at Walsh Regional Medical Unit, and (4) Defendants are protected by the doctrine of qualified immunity.[49]

With respect to the State Defendants' first argument (regarding the seriousness of Plaintiff's medical condition and the state of mind of the State Defendants), Plaintiff responds with a series of arguments: (1) a question of fact exists regarding whether Plaintiff suffers from a sufficiently serious medical condition (i.e., paralysis), as is evident from the medical records that the State Defendants did not provide to the Court and that Plaintiff is providing to the Court at Dkt. No. 79, Part 3, at Ex. 31; (2) the State Defendants' failure to hand feed Plaintiff was not merely a "disagreement" between a patient and his doctors but was a conscious infliction of

---

[49]    (Dkt. No. 72, Part 17, at 13-22 [State Defs.' Mem. of Law].)

indignation, humiliation, and, indeed, pain (due to choking, stomach pains, vomiting, and neck and back pains); (3) the conduct of Defendants Hochstetler and Gardella constituted criminal recklessness since they temporarily ordered Plaintiff's hand feeding to be discontinued after Plaintiff had an altercation with a nurse, and then they permanently discontinued that hand feeding after Plaintiff (as he puts it) "went balistic [sic] and verbally cursed Hochstetler out," demonstrating that the discontinuance of hand feeding was "payback for [Plaintiff's] abusive tongue"; (4) the conduct of Defendants Hochstetler and Gardella constituted criminal recklessness since, on October 28, 2002, they issued a "discharge summary" that was in total contradiction to a "Specialist's Report" issued by neurologist Dr. Mark P. Dentinger on October 18, 2002.[50]

With respect to the State Defendants' second argument (regarding the personal involvement of various of the State Defendants), Plaintiff argues that those Defendants who were supervisory officials did not merely receive complaints from Plaintiff but responded to those complaints, explained the medical treatment provided to Plaintiff and defended DOCS, Coxsackie C.F., and/or Mohawk C.F.[51]  For example, Defendants Bernardi and Smith personally investigated Plaintiff's complaints (and Defendant Bernardi promulgated DOCS Directive 2614).[52]  Defendants Goord, Bernardi, Wright and Smith entered into contractual agreements with Correctional Medical Services, Inc., knowing that those contracts would violate the Eighth

---

[50]     (Dkt. No. 79, Part 1, at 8-15 [Plf.'s Mem. of Law]; Dkt. No. 72, Part 4, at 204 [Ex. A to Finkelstein Decl., attaching transcript of Plf.'s deposition].)

[51]     (Dkt. No. 79, Part 1, at 15-20 [Plf.'s Mem. of Law].)

[52]     (*Id*. at 15-16.)

Amendment, the ADA, and the RA.[53]  Defendant Wright personally signed letters responding to Plaintiff's complaints.[54]  Defendant Filion personally investigated Plaintiff's complaints, rendering personal "findings" with regard to those complaints.[55]  Defendant Perlman personally investigated Plaintiff's complaints, taking the position that it was beyond the authority of an Inmate Grievance Review committee to recommend that Plaintiff's requested accommodations be granted.[56]  Defendant Masterson personally reviewed all denials of inmates' requests for reasonable accommodations--reversing, modifying or affirming those denials.[57]  Finally, Defendants Rosado and Rockhill were involved in developing and implementing Plaintiff's health care plan at Walsh Regional Medical Unit.[58]

With respect to the State Defendants' third argument (regarding the cause of Plaintiff's suffering), Plaintiff argues that (1) while he did refuse a few routine exams (e.g., regarding his vital signs, blood pressure, etc.), he did not refuse either of the two diagnostic neurological exams ordered for him, and (2) while he did refuse medications on a few occasions, he did so because of adverse reactions he had experienced from those medications in the past, and, in any event, those medications were not for the treatment of any pains or ailments in his arms.[59]

---

[53]     (*Id*. at 16.)

[54]     (*Id*. at 17.)

[55]     (*Id*. at 18.)

[56]     (*Id*.)

[57]     (*Id*. at 18-19.)

[58]     (*Id*. at 19-20.)

[59]     (*Id*. at 20-22.)

27

With respect to the State Defendants' fourth argument (regarding qualified immunity), Plaintiff argues that the record evidence demonstrates that those State Defendants who were Plaintiff's physicians were "plainly incompetent" in that they "did not know the meaning of [his] diagnos[es]" and they "did not understand the medical definition of 'paralysis' or its verios [sic] stages."[60]  Plaintiff also argues that it is clear that Defendant Hochstetler was intending to cause Plaintiff pain from the fact that Defendant Hochstetler issued a "negative impact discharge summary" on October 28, 2002, despite the fact that Plaintiff had received a "favorable neurology report just weeks earlier" from Dr. Dentinger.[61]

I need not reach the merits of the State Defendants' second, third, and fourth arguments, because I find that their first argument has merit.  Specifically, I agree with them that, even if the Court were to assume that Plaintiff's medical needs were sufficiently serious for purposes of the Eighth Amendment, Plaintiff has failed to adduce any evidence establishing that the State Defendants acted with the requisite state of mind with regard to those medical needs.  I reach this conclusion for the several reasons stated by the State Defendants in their memorandum of law. (*See* Dkt. No. 72, Part 17, at 17-19 [State Defs.' Mem. of Law].)

A more detailed analysis of the State Defendants' argument properly begins with the recognition that the term "deliberate indifference" refers to a state of mind that is equivalent to *criminal recklessness*.[62]  Mere *negligence* by a DOCS employee is not sufficient for a prisoner to

---

[60]     (*Id*. at 23-26.)

[61]     (*Id*. at 26.)

[62]     *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).

state a claim under the Eighth Amendment.[63]  For this reason, a prisoner's *disagreement* with a

DOCS employee regarding the treatment that he should properly receive is insufficient to state a

claim under the Eighth Amendment.[64]  As the Second Circuit has explained,

> It must be remembered that the State is not constitutionally obligated,
> much as it may be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  [A]
> correctional facility is not a health spa, but a prison in which convicted
> felons are incarcerated.  Common experience indicates that the great
> majority of prisoners would not in freedom or on parole enjoy the
> excellence in [medical] care which plaintiff[] understandably seeks
> . . . .  We are governed by the principle that the objective is not to
> impose upon a state prison a model system of [medical] care beyond
> average needs but to provide the minimum level of [medical] care
> required by the Constitution. . . .  The Constitution does not command
> that inmates be given the kind of medical attention that judges would
> wish to have for themselves . . . .  The essential test is one of medical
> necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

Here, Plaintiff received rather constant medical attention while at Mohawk C.F.'s Walsh

Regional Medical Unit.  In their Rule 7.1 Statement, the State Defendants describe this medical

attention, which included the development of a health care plan for Plaintiff, and the provision of

assistance with various activities of daily living.[65]  These factual assertions are supported by the

---

[63]     *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has
been negligent in diagnosing or treating a medical condition does not state a valid claim of
medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a
constitutional violation merely because the victim is a prisoner.").

[64]     *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-
established that mere disagreement over the proper treatment does not create a constitutional
claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different
treatment does not give rise to an Eighth Amendment violation.").

[65]     (Dkt. No. 72, Part 2, ¶¶ 16-21 [State Defs.' Rule 7.1 Statement].)

record citations offered by the State Defendants (as well as by other portions of the record, not cited by the State Defendants).[66]  In his Rule 7.1 Response, Plaintiff fails to offer any response whatsoever with regard to these factual assertions–much less offer a response in matching numbered paragraphs, with the denials supported by a specific citation to the record where the factual issue arises, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court.[67]  Various other factual assertions by the State Defendants (regarding medical care treatment denied by Plaintiff) are either admitted by Plaintiff or not specifically denied by him in accord with Local Rule 7.1(a)(3).[68]  Moreover, several record citations that Plaintiff does offer in support of his denials do not in fact support those denials.[69]

As explained above, Plaintiff was specifically advised of the potential consequences of failing to respond to the State Defendants' motion for summary judgment.[70]  Moreover, his special status as a *pro se* civil rights litigant has been revoked for the remainder of this action.[71] Even if his special status had not been revoked, I would decline to exercise my discretion to *sua*

---

[66]     (*Id*.)

[67]     (*See generally* Dkt. No. 79, Part 2 [Plf.'s Rule 7.1 Response].)

[68]     (*Compare* Dkt. No. 72, Part 2, ¶¶ 23, 24, 28 [State Defs.' Rule 7.1 Statement] *with* Dkt. No. 79, Part 2, ¶¶ 10, 11, 14 [Plf.'s Rule 7.1 Response, admitting that (1) he routinely refused medications, physical therapy, assistance with ADLs, physical examinations, weekly assessments, and to be weighed, and (2) during the time in question, generally his weight was stable, and indeed 30 pounds above the ideal weight for a person of his height].)

[69]     (*See*, *e.g.*, Dkt. No. 79, Part 2, ¶ 16 [Plf.'s Rule 7.1 Response, citing to Dkt. No. 72, Part 9, at 100, which does not support Plf.'s denial of Paragraph 30 of Defendants' Rule 7.1 Statement].)

[70]     *See*, *supra*, note 21 of this Report-Recommendation.

[71]     *See*, *supra*, Part I.B. of this Report-Recommendation.

*sponte* scour the record (beyond the review I have already performed) for evidence disputing the State Defendants' factual assertions.[72]  As a result, I treat as undisputed the State Defendants' aforementioned factual assertions, namely those factual assertions contained in Paragraphs 16, 17, 18, 19, 20, 21, 23, 30 (and part of the factual assertions contained in Paragraphs 24 and 28) of their Rule 7.1 Statement.  Based on these undisputed facts, I cannot imagine circumstances under which the treatment that Plaintiff received would give rise even to a claim of ordinary negligence against the State Defendants, much less a claim of deliberate indifference.

Although my above-stated conclusion (that the treatment Plaintiff received does not give rise to a claim of deliberate indifference against the State Defendants) needs no further support, it is further supported by the fact that, in his deposition, Plaintiff admitted that he could eat independently with the use of adaptive equipment (which was provided to him by Defendants in this action).[73]  This admission is certainly consistent with the other record evidence, which indicates that Plaintiff can eat by himself (with the use of adaptive equipment) and that his weight, during the relevant time period, was generally above the "ideal" weight for a person of his height.[74]  What Plaintiff complains about in this action is the indignity and discomfort of being made to eat out of a bowl "like a dog," as he puts it.[75]  However, "mere inconvenience or

---

[72]      *See*, *supra*, note 12 of this Report-Recommendation.

[73]      (Dkt. No. 72, Part 4, at 216-217 [Ex. A to Finkelstein Decl., attaching transcript of Plf.'s deposition].)

[74]      (*See, e.g.*, Dkt. No. 72, Part 10, ¶ 15 [Antonsen Decl.]; Dkt. No. 72, Part 8, ¶ 18 [Howard Decl.]; Dkt. No. 72, Part 9, at 103, 109 [Ex. A to Howard Decl., attaching Plf.'s medical records] [filed under seal].)

[75]      (Dkt. No. 72, Part 4, at 42, 43, 46, 48, 56, 71, 197, 199, 215, 217, 218, 220 [Ex. A to Finkelstein Decl., attaching transcript of Plf.'s deposition].)

discomfort" while eating in prison does not state an Eighth Amendment claim of deliberate indifference. *Powell v. Kingston*, 05-CV-0112, 2005 U.S. Dist. LEXIS 5586, at *6-7 (W.D. Wis. March 29, 2005) (prisoner made to eat meals served in bags without assistance of utensils). As is often observed by federal courts, "[t]he Constitution does not mandate comfortable prisons and conditions that are restrictive and even harsh are part of the penalty that criminal offenders pay for their offenses against society." *Powell*, 2005 U.S. Dist. LEXIS 5586, at *7 [internal quotation marks and citations omitted].

Finally, I note that none of Plaintiff's arguments in opposition to the State Defendants' argument on this subject are persuasive or even on topic. Plaintiff's first argument (i.e., that the medical records that Plaintiff is providing to the Court at Dkt. No. 79, Part 3, at Ex. 31 create a question of fact regarding whether Plaintiff suffers from a sufficiently serious medical condition) has nothing to do with whether the State Defendants *acted with the requisite state of mind* with regard to Plaintiff's medical condition. (Nor do those 18 pages of records, in fact, establish that the State Defendants acted with such a state of mind.) Plaintiff's second argument (i.e., the State Defendants' failure to hand feed Plaintiff was not merely a "disagreement" between a patient and his doctors but was a conscious infliction of pain) is completely conclusory, unsupported by any record citations regarding any State Defendants. Finally, Plaintiff's third and fourth arguments (i.e., regarding the conduct of Defendants Hochstetler and Gardella) have to do with two *Corporate* Defendants, not any *State* Defendants.

As a result, I recommend that the Court dismiss Plaintiff's claim against the State Defendants under the Eighth Amendment on the alternative ground that Plaintiff has failed to adduce facts establishing that the State Defendants acted with deliberate indifference to

Plaintiff's medical needs.

### 3.      Claim Under ADA and RA

The State Defendants next argue that Plaintiff fails to state a claim under the ADA and the RA, because (1) he fails to allege facts indicating, or adduce evidence establishing, that Defendants were motivated by discriminatory animus or ill will due to disability, and (2) he fails to identify programs from which he was excluded.[76]

Plaintiff responds with three arguments: (1) it is beyond question that, pursuant to the definition of "disability" in the ADA and the RA, Plaintiff had a disability under the circumstances; (2) by including a copy of Section D of DOCS Directive 2614, Plaintiff has adduced evidence of Defendants' "state of mind" in denying the assistance that Plaintiff requested, namely, their feeling that "it was too burdensome" to provide Plaintiff such assistance, and that they would rather force Plaintiff to "humiliat[e]," "belitt[le]," and "dehumaniz[e]" himself; and (3) Plaintiff has, in fact, identified which programs or services from which he was excluded, namely, the programs or services described in Paragraph 73 of his Complaint.[77]

Plaintiff's first argument is either a non-sequitur or a straw man, since the State Defendants do not argue that Plaintiff did not possess a "disability" under the ADA and the RA.[78] Furthermore, I need not reach the merits of Plaintiff's third argument, because I find his second argument to be unconvincing: DOCS Directive 2614 in no way constitutes evidence of any

---

[76]      (Dkt. No. 72, Part 17, at 22-24 [State Defs.' Mem. of Law].)

[77]      (Dkt. No. 79, Part 1, at 27-29 [Plf.'s Mem. of Law].)

[78]      (Dkt. No. 72, Part 17, at 22-24 [State Defs.' Mem. of Law].)

discriminatory animus or ill will due to disability by the State Defendants.[79]  First, it is not a

violation of the ADA to deny an inmate's request for reasonable accommodations because of a

reason *other than his disability*.[80]  (For example, where an inmate alleges that he has been treated

differently than other disabled inmate simply because of incompetent medical treatment, he has

not stated a claim of discrimination under the ADA.)[81]  Here, I can find no record evidence, or

even a nonconclusory factual allegation, that Plaintiff was discriminated against because of his

disability.[82]  Furthermore, it is not a violation of the ADA to deny an inmate's request for

---

[79]      (Dkt. No. 79, Part 3, at Ex. 28 [Plf.'s Opp. to Defs.' Motion, attaching DOCS
Directive 2614, which states, in pertinent part, "The Department is required to make 'reasonable
accommodations' or modifications to existing policies and procedures . . . unless to do so would
be an undue burden on the Department, cause a fundamental alteration to a program, or
compromise the safety or security of the facility. . . .  DEFINITIONS . . .  D. Undue Burden:
reasonable accommodations or modifications which would result in a fundamental alteration in
the nature of a program or activity or in undue financial and administrative hardship.  This is a
limited exception under the ADA and generally cannot be used for denying an accommodations
or a modification requested for program accessibility."].)

[80]      *See* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, *by
reason of such disability*, be excluded from participation in or be denied the benefits of the
services, programs, or activities of a public entity, or be subjected to discrimination by any such
entity.") [emphasis added]; *Gracia v. S.U.N.Y. Health Sciences Ct. of Brooklyn*, 280 F.3d 98, 112
(2d Cir. 2001) ("[A] private suit for money damages under Title II of the ADA may only be
maintained against a state if the plaintiff can establish that the Title II violation was motivated by
either discriminatory animus or ill will due to disability.").  For the sake of argument, I will
assume that the ADA and RA apply to state prisons, although that fact is of some dispute in
federal courts.  *Compare Saunders v. Horn*, 960 F. Supp. 893, 897 (E.D. Pa. 1997) ("[I]t would
seem . . . that both the ADA and the Rehabilitation Act apply to state and local correctional
facilities.") *with Callaway v. Smith County*, 991 F. Supp. 801, 805 (E.D. Tex. 1998) ("[T]he
language of the Americans with Disabilities Act and the Rehabilitation Act did not make
unmistakably clear that the statutes applied to state prisons."); *see also Randolph v. Rodgers*, 980
F. Supp. 1051, 1059-1060 (E.D. Mo. 1997) (collecting cases).

[81]      *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

[82]      *See Dukes v. Georgia*, 428 F. Supp.2d 1298, 1322-1324 (N.D. Ga. 2006) (granting
defendant's motion for summary judgment with respect to prisoner's ADA / RA claim based on

reasonable accommodations solely because of cost; indeed, in certain circumstances, the ADA

expressly exempts defendants from having to make reasonable accommodations for disabled

persons if it would be unduly burdensome to the defendants to make such accommodations.[83]

Second, even if it were a violation of the ADA to deny an inmate's request for reasonable

accommodations solely because of cost, I can find no evidence in the record that the State

Defendants were denying Plaintiff's request for reasonable accommodations solely because of

cost. The only record citation that Plaintiff offers for this assertion does not constitute such

evidence; and, it is worth noting, that record citation actually suggests that Plaintiff, on several

occasions between April 26, 2001, and May 1, 2001, refused to be treated or examined.[84]  Nor

does Plaintiff's conclusory argument to that effect (i.e., that Defendants were motivated by their

feeling that "it was too burdensome" to provide such assistance to Plaintiff) in his opposition

memorandum of law constitute such evidence.

    Granted, I note that, in his deposition, Plaintiff testified that, at one point, following a

complaint by a nurse's aid that it was taking too long to hand feed Plaintiff shredded raw

---

defendant's alleged failure to, *inter alia*, provide plaintiff assistance with eating, because
"Plaintiff has proffered no evidence to show that Defendant's actions were taken on the basis of
Plaintiff's disability . . . .").

[83]     *See*, *e.g.*, 42 U.S.C. § 12182(2)(A)(iii) (making exception for entities that "can
demonstrate that taking such steps [of accommodation] would . . . result in an undue burden");
42 U.S.C. 12111(10)(B) (articulating factors to be considered in determining whether
accommodation would impose undue hardship under ADA); *EEOC v. Amego, Inc.*, 110 F.3d
125, 148 (1st Cir. 1997) (entity exempted from requirements of ADA due to "undue hardship"
that would occur to entity due to cost of proposed accommodation) [citing *Vande Zande v.
Wisconsin Dep't of Admin.*, 44 F.3d 538, 542 [7th Cir. 1995]).

[84]     (*See*, *e.g.*, Dkt. No. 72, Part 9, at 733-734 [Ex. A to Howard Decl., attaching Plf.'s
medical records] [filed under seal].)

cabbage, Defendant Hochstetler directed his nurses to stop hand feeding Plaintiff for a couple

days because doing so was too "cumbersome."[85]  However, this evidence does not create a

reasonable dispute of material fact with regard to the State Defendants' motion for two reasons.

First, Defendant Hochstetler is not a *State* Defendant.  Regardless of why Defendant Hochstetler

acted, there is no evidence that any State Defendant took any adverse action against Plaintiff

based on a claim of "undue burden."  Second, even if Defendant Hochstetler were a *State*

Defendant, this motive by Defendant Hochstetler (to take action based on burdensomeness to his

medical staff) would be rendered fleeting and insignificant when compared to Plaintiff's other

deposition testimony that Defendant Hochstetler was acting the way he did because (1) Plaintiff

had been accused of pushing a tray onto one of the nurses, and (2) Plaintiff had become verbally

abusive toward Defendant Hochstetler on two occasions, first after he placed Plaintiff on a

cabbage diet, and then after he ordered his nurses to temporarily stop hand feeding Plaintiff.[86]

     Furthermore, setting aside this summary judgment analysis (i.e., involving the

---

[85]       (Dkt. No. 72, Part 4, at 70-71, 83 [Ex. A to Finkelstein Decl., attaching transcript of Plf.'s deposition, wherein Plaintiff testified, *inter alia*, "Nurse's aid . . . complained about how long it was taking to feed me the shredded raw cabbage. . . . [Dr. Hochstetler] said, 'Well, it is too incumberson [sic], I am not going to have nurses feed you . . . .  Only going to be on this a couple days, we will feed you when you get off.  But no, I am not going to have my nurse feed you'"].)

[86]       (Dkt. No. 72, Part 4, at 59, 70-71, 83, 220 [Ex. A to Finkelstein Decl., attaching transcript of Plf.'s deposition, wherein Plaintiff testified, *inter alia*, "I was accused of pushing a tray on [sic] one of the nurses . . . .  [Dr. Hochstetler] put me on the cabbage. . . .  I ended up calling [Dr. Hochstetler] words I won't repeat. . . .  I went ballistic, to my dismay.  I called the man every name in the book, none of which I am going to repeat here.  And so he took exception to that, and he said, 'Since you want to talk to me like that, I swear, I swear by God . . . as long as you are in my facility . . . my nurses will never feed you, and in fact you are going to get the bare minimum.' . . .  I went ballistic. . . .  You know, I mean, maybe I shouldn't have went [sic] ballistic, maybe I shouldn't have done what I did."].)

consideration of record evidence), and turning to a motion-to-dismiss analysis (i.e., involving the

consideration of only Plaintiff's Complaint), I find that Plaintiff has not even alleged, in his

Complaint, facts indicating such discriminatory animus or ill will due to disability by the State

Defendants.[87]   Rather, Plaintiff alleges that Defendants' denial of Plaintiff's requests for

reasonable accommodations was caused by unspecified misleading statements about Plaintiff

made by unidentified "lower level[]" medical staff to "higher up" officials, motivated by the

belief of "lower level[]" medical staff that Plaintiff was "a difficult patient who had to be put in

his place."[88]   Thus, according to Plaintiff's own factual allegations, the only staff members who

were motivated by any animus or ill will whatsoever were "lower level[]" staff members.  This is

significant because 11 of the 16 State Defendants are *supervisory* officials,[89] and thus cannot

reasonably be understood to fall into the category of so-called "lower level[]" staff members.  In

any event, the animus or ill will that Plaintiff alleges was not based on Plaintiff's disability but

on the "lower level[]" staff members' perception that Plaintiff had a "difficult" personality.  It is

worth noting that elsewhere in Plaintiff's Complaint he alleges that staff members perform

"minor tasks" for other patients with physical disabilities, suggesting, again, that they do not

---

[87]        (*See* Dkt. No. 1 [Plf.'s Compl.].)

[88]        (*Id.* at ¶ 73[G] [alleging, *inter alia*, "truth be told, the defendants['] denial of
reasonable accommodations [is] not truly based or premised upon there being a non-verifiable
medical condition . . . [;] rather, defendants[']s denial is based upon the lower levels of medical
staff misleading those higher up, simply because they considered plaintiff a difficult patient who
had to be put in his place"].)

[89]        *See*, *supra*, note 1 of this Report-Recommendation.

harbor an animus or ill will against disabled inmates.[90]

Finally, yet another reason for concluding that Plaintiff's ADA and RA claim against the 16 individual State Defendants fail to state a claim upon which relief may be granted: "Because . . . the ADA [and the RA] provide[] redress to disabled individuals for discrimination by a public entity, individuals may not be sued [under those statutes]." *Atkins v. County of Orange*, 251 F. Supp.2d 1225, 1233 (S.D.N.Y. 2003) [citations omitted].

As a result, I recommend that the Court dismiss Plaintiff's claim against the State Defendants under the ADA and the RA on the alternative ground that Plaintiff has failed to allege facts indicating, or adduce facts establishing, that the State Defendants violated either the ADA or RA.  I note that a similar conclusion (that Plaintiff's ADA and RA factual allegations fail to state a claim) was reached by the Southern District of New York in *Shomo v. Myers*, 03-CV-10213, 2005 WL 7564834, at *6 (S.D.N.Y. Apr. 4, 2005) ("I decline to adopt the statute of limitations analysis . . . for [Plaintiff's claim under the ADA and RA], . . . because Shomo clearly lacks a cause of action under either statute.").

### 4.    Claim Under 42 U.S.C. § 1981

Finally, the State Defendants argue that Plaintiff fails to state a claim under 42 U.S.C. § 1981, because he fails to allege facts indicating that the State Defendants discriminated against him because of his race.[91]  Plaintiff fails to respond to this argument.[92]

---

[90]      (*Id*. at 73[C] [alleging, *inter alia*, "staff will not assist [Plaintiff] in such minor tasks as making tea, [but] sometimes they do daily for other patients with far less physical disabilities [than] the plaintiff has . . . ."].)

[91]      (Dkt. No. 72, Part 17, at 24 [State Defs.' Mem. of Law].)

[92]      (*See generally* Dkt. No. 79, Part 1 [Plf.'s Mem. of Law].)

"Where a properly filed motion is unopposed and the Court determines that the moving

party has met its burden to demonstrate entitlement to the relief requested therein, the non-

moving party's failure to file or serve any papers as required by this Rule shall be deemed as

consent to the granting or denial of the motion, as the case may be, unless good cause be shown."

N.D.N.Y. L.R. 7.1(b)(3).  Among the "papers" required to be filed and served by Plaintiff in

response to the State Defendants' motion is a memorandum of law.[93]  Because Plaintiff has, in

his memorandum of law, failed to oppose the State Defendants' argument, he has "consented" to

that argument under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[94]

Because Plaintiff has "consented" to the State Defendants' argument, the only remaining

issue is whether the State Defendants' have met their burden "to demonstrate entitlement to the

relief requested" through that argument.  This threshold burden has appropriately been

---

[93]     N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf*. Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

[94]     N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *see*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]).

characterized as "modest."[95]  This is because, as a practical matter, the burden requires only that

the State Defendants present an argument that is "facially meritorious."[96]  I find that the State

Defendants' argument is facially meritorious.  Moreover, even if I were to examine the State

Defendants' argument in depth, and I were to independently scour the record for any proof of a

factual dispute, I am confident that I would reach the same conclusion.  The State Defendants are

indeed correct that 42 U.S.C. § 1981 prohibits only discrimination that is motivated by *racial*

---

[95]     *See Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)]; *accord*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.).
    Authority exists for the similar proposition that a review of whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested dispositive motion.  *See, e.g.*, *Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers*), adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[96]     *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *accord*, *Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

animus,[97] and I have found no allegation (or evidence) that adverse actions were taken against

Plaintiff because of his race.[98]

     As a result, I recommend that the Court dismiss Plaintiff's claim against the State

Defendants under 42 U.S.C. § 1981 on the alternative ground that Plaintiff has failed to allege

facts indicating that the State Defendants discriminated against him because of his race.

### 5.      Claims Under 42 U.S.C. §§ 1984, 1985, 1986, and 2000d

     Under the circumstances, the Court can, and should, *sua sponte* review the pleading

sufficiency of Plaintiff's other civil rights claims (i.e., those claims occurring under 42 U.S.C. §§

1984, 1985, 1986, and 2000d).  (*See* Dkt. No. 1, ¶¶ 28, 78, 79 [Plf.'s Compl., citing referenced

statutes].)  This authority is derived from three sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which

provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma*

*pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . .

. fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a

defendant who is immune from such relief"; (2) 28 U.S.C. § 1915A(b), which provides that,

"[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the

complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief

may be granted . . . ."; and (3) Rule 12(h)(3) of the Federal Rules of Civil Procedure, which

---

[97]      The State Defendants refer to 42 U.S.C. § 1981 as "the Equal Rights Act."  (Dkt. No. 72, Part 17, at 24 [State Defs.' Mem. of Law].)  If that is indeed the popular name for 42 U.S.C. § 1981, I am unfamiliar with it.  Rather, it appears that 42 U.S.C. § 1981--together with the various other federal statutes cited by Plaintiff in his Complaint--are popularly known as "the Civil Rights Statutes."  In any event, the State Defendants are indeed correct that 42 U.S.C. § 1981 regards only discrimination *based on race*.  *See* 42 U.S.C. § 1981(a) ("All persons . . . shall have the same right to . . . equal benefit of all laws . . . as is enjoyed by white citizens . . . .").

[98]      (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."[99]

As for Plaintiff's attempted claim under 42 U.S.C. § 1984, "[s]ections one and two of 42 U.S.C. § 1984 were declared unconstitutional by the Supreme Court in 1998 . . ., and sections three and four were repealed by Congress in 1948.  Accordingly, [Plaintiff] has no viable claims under 42 U.S.C. § 1984 . . . ."  *Dennison v. Pa. Dept. of Corr.*, 268 F. Supp.2d 387, 395, n.3 (M.D. Pa. 2003), *accord*, *McDuffy v. Koval*, 226 F. Supp.2d 541, 550-551 (D. Del. 2002), *Bd. of Tr. Sabis Intern. Sch. v. Montgomery*, 205 F. Supp.2d 835, 853, n.12 (S.D. Oh. 2002).

As for Plaintiff's attempted claim under 42 U.S.C. § 1985, Plaintiff has alleged no facts indicating the existence of a conspiracy to interfere with his civil rights.  (*See* Dkt. No. 1, ¶¶ 28, 78, 79  [Plf.'s Compl.].)  Specifically, for the reasons stated in this Part of the Report-Recommendation, and for the reasons stated above in Part II.A.2.-4. of this Report-Recommendation, I find no factual allegations indicating the occurrence of any violation of the ADA, the RA, and 42 U.S.C. §§ 1981, 1983, 1984, 1986, and 2000d in which the State Defendants could have conspired (nor do I find any factual allegations indicating a conspiracy).

As for Plaintiff's attempted claim under 42 U.S.C. § 1986, Plaintiff has alleged no facts indicating that any of the State Defendants, "having knowledge that any of the wrongs conspired to be done, and mentioned in [42 U.S.C. § 1985], are about to be committed, and having power

---

[99]        I note that, under the circumstances, the Court would also be able to *sua sponte* address the *evidentiary* sufficiency of Plaintiff's claims under 42 U.S.C. §§ 1984, 1985, 1986, 2000d, since Plaintiff was certainly on notice that he had to come forward with all of his evidence regarding those claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.") [citations omitted].

to prevent or aid in preventing the commission of the same, neglects or refuses so to do."  42

U.S.C. § 1986.  (*See also* Dkt. No. 1, ¶¶ 28, 78, 79  [Plf.'s Compl.].)  Specifically, because I find

no factual allegations indicating a violation of 42 U.S.C. § 1985, I find no factual allegations

indicating that any State Defendants (1) had knowledge of a violation of 42 U.S.C. § 1985 and

(2) neglected to prevent such a violation.

Finally, as for Plaintiff's attempted claim under 42 U.S.C. § 2000d, that Section, like 42

U.S.C. § 1981, prohibits only discrimination based on a person's "race, color, or national origin."

42 U.S.C. § 2000d.  Plaintiff has alleged no facts indicating discrimination on such a basis.  (*See*

Dkt. No. 1, ¶¶ 28, 78, 79  [Plf.'s Compl.].)

As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's claim against the

State Defendants under 42 U.S.C. §§ 1984, 1985, 1986 and 2000d on the ground that Plaintiff

has failed to allege facts indicating that the State Defendants violated any of those statutes.

## B.    Corporate Defendants' Motion for Summary Judgment

The Corporate Defendants argue that Plaintiff's claims against them should be dismissed

for four reasons: (1) a failure to state, or establish, a claim under the Eighth Amendment; (2) a

failure by Plaintiff to exhaust his available administrative remedies before filing this action; (3) a

failure to state a claim under the ADA or the RA; and (4) a failure to state a claim under the Civil

Rights Act.  (*See generally* Dkt. No. 73, Part 8 [Corporate Defs.' Mem. of Law].)

### 1.    Eighth Amendment Claim

The Corporate Defendants argue that Plaintiff's Eighth Amendment deliberate

indifference claim fails as a matter of law because (1) Plaintiff fails to allege facts indicating, or

adduce evidence establishing, that the Corporate Defendants acted with the requisite state of

mind with regard to Plaintiff's medical condition, and (2) Plaintiff fails to allege facts indicating,

or adduce evidence establishing, the personal involvement of the Corporate Defendants in the

constitutional violations alleged.[100]

In response to the Corporate Defendants' first argument, Plaintiff argues that the conduct

of Defendants Hochstetler and Gardella constituted criminal recklessness since (1) in April of

2001, they temporarily ordered Plaintiff's hand feeding to be discontinued after Plaintiff had an

altercation with a nurse, and then they permanently discontinued that hand feeding after Plaintiff

(as he puts it) "went balistic [sic] and verbally cursed Hochstetler out," demonstrating that the

discontinuance of hand feeding was "payback for [Plaintiff's] abusive tongue," (2) on October

28, 2002, they issued a "discharge summary" that was in total contradiction to a "Specialist's

Report" issued by neurologist Dr. Dentinger on October 18, 2002.[101]

The problem with Plaintiff's argument regarding Defendants Hochstetler and Gardella is

that the record evidence demonstrates, at most, a mere *disagreement* between Plaintiff and

Defendants Hochstetler and Gardella regarding the medical care that Plaintiff should have

properly received at Coxsackie C.F.'s Regional Medical Unit, not (as Plaintiff argues) a

conscious infliction of indignation, humiliation, and pain.  As found by the Southern District

under nearly identical circumstances in *Shomo v. Myers*, during the time in question, there

existed in Plaintiff's medical records both reports that Plaintiff needed assistance with various

activities of daily living (such as hand feeding), and reports that he did *not* need such assistance;

and, as a result of these conflicting medical opinions, medical professionals were "compelled to

---

[100]     (Dkt. No. 73, Part 8, at 2-6 [Corporate Defs.' Mem. of Law].)

[101]     (Dkt. No. 79, Part 1, at 8-15 [Plf.'s Mem. of Law].)

make a professional judgment of [their] own." *Shomo*, 2007 U.S. Dist. LEXIS 2608, at *12-14.

      For example, on or about March 21, 2001, Dr. Murnane, a neurologist, examined Plaintiff and reported that he "doubt[ed] strongly" that Plaintiff had "any significant peripheral nerve lesion (either plexus or radiculopathy) as a cause of his 'paralysis.'"[102]  Moreover, Plaintiff's medical records at the Coxsackie Regional Medical Unit contained several reports indicating that Plaintiff did not need to be hand fed and/or that he might be malingering.  One record reported that, on or before March 26, 2001, Defendant Hochstetler had obtained from Sullivan C.F. specific details from Plaintiff's medical records there indicating that Plaintiff was generally able to eat independently, once his meals were "set up" for him.[103]  Another record reported that, on March 31, 2001, at Coxsackie C.F., Plaintiff spit his foot out in a garbage can immediately after being hand fed his breakfast, and then claimed that he had vomited.[104]  Other records reported that, on April 8, 2001, when medical staff prepared to assist Plaintiff with eating, he declined the

---

    [102]    (Dkt. No. 72, Part 9, at 711-12 [Ex. A to Howard Decl., attaching Plaintiff's "Progress Notes" dated 3/21/01, authored by Dr. Murnane]; *see also* Dkt. No. 72, Part 9, at 94 [Ex. A to Howard Decl., attaching Discharge Summary by Defendant Hochstetler regarding Plaintiff, dated 10/28/02, stating that "Dr. Murnane, Neurologist[,] has seen [Plaintiff], in March 2001.  From his consult, Dr. Murnane says 'Given the presence of intact DTR's I doubt strongly any significant peripheral nerve lesion (either plexus or radiculopathy) as a cause of his 'paralysis.'  On review of 2000 EMG done, I disagree with the assessment of a left brachial plexus lesion given the normal motor and sensory amplitudes . . . .  I suspect the problem is one of the CNS either in the cervical cord or functional (psychiatric).'"] [emphasis in original]; Dkt. No. 72, Part 9, at 684 [Ex. A to Howard Decl., attaching Plaintiff's "Progress Notes" dated 3/26/01, stating, "Current exam suggests that peripheral lesion is not cause of paralysis–may be in cervical cord or functional (psychiatric)"].)

    [103]    (Dkt. No. 1, Part 2, at 7 [Ex. 2 to Plf.'s Verified Compl., attaching memorandum from Defendant Hochstetler dated 3/26/01, summarizing information obtained from Sullivan C.F. regarding Plf.'s ability to eat independently].)

    [104]    (Dkt. No. 72, Part 9, at 718 [Ex. A to Howard Decl., attaching Plaintiff's "Progress Notes" dated 3/31/01, stating, at end of report, "Dr. Hochstetler aware"].)

bulk of the meal and, instead, expressed an interest in filing a medical complaint against medical staff.[105]

Relying on these reports (among other reports), Defendants Hochstetler and Gardella made the professional judgment that Plaintiff did not need assistance with certain activities of daily living, including hand feeding.  Rather, their professional judgment was that Plaintiff could (and should be encouraged to) eat independently, with the use of adaptive equipment (i.e., a nonslip "scoop bowl," a nonslip "Dyson pad," and a straw), once corrections officers had "set up" his meal tray.[106]  However, Plaintiff grew frustrated with this plan because he felt he was being forced to "huff and suck" down his food "like a dog," as he put it.[107]  As a result, he became abusive toward the medical staff.[108]  When this happened, Defendants Hochstetler and

---

[105]     (Dkt. No. 72, Part 9, at 720 [Ex. A to Howard Decl., attaching Plaintiff's "Progress Notes" dated 4/8/01]; Dkt. No. 72, Part 9, at 122 [Ex. A to Howard Decl., attaching Plaintiff's "Refusal of Medical Examination and/or Treatment," dated 4/8/01, which states, "Dinner pt. refused assistance with dinner," and indicated that Plaintiff instead wanted to file a medical complaint]; cf. Dkt. No. 72, Part 9, at 117 [Ex. A to Howard Decl., attaching Plaintiff's "Refusal of Medical Examination and/or Treatment," dated 3/7/01, which states that "Pt refused both breakfast and lunch trays"].)

[106]     (Dkt. No. 72, Part 9, at 94 [Ex. A to Howard Decl., attaching Discharge Summary by Defendant Hochstetler regarding Plaintiff, dated 10/28/02]; Dkt. No. 72, Part 9, at 80, 98, 99, 100 [Ex. A to Howard Decl., attaching Plaintiff's medical records dated 11/21/01, 3/21/01, 10/17/02 and 10/23/02, respectively]; Dkt. No. 72, Part 4, at 48, 56, 190 [Ex. A to Finkelstein Decl., attaching transcript of Plf.'s deposition]; Dkt. No. 1, Part 2, at 7 [Ex. 2 to Plf.'s Verified Compl., attaching memorandum from Defendant Hochstetler dated 3/26/01, stating that "[i]t is standard medical practice to assist each patient in maintaining as much independence as possible."].)

[107]     (Dkt. No. 72, Part 4, at 42, 43, 46, 48, 56, 71, 197, 199, 215, 217, 218, 220 [Ex. A to Finkelstein Decl., attaching transcript of Plf.'s deposition].)

[108]     (See, e.g., Dkt. No. 72, Part 9, at 709-710 [Ex. A to Howard Decl., attaching Plaintiff's "Progress Notes" dated 3/18/01, stating, "Noon meal tray set up for patient.  Patient adamantly refuses to eat unless he is fed by staff.  Order from NP is for pt to feed himself.  Pt is

Gardella decided to stop the hand feeding that they had occasionally been providing to Plaintiff.[109]

For example, in late April of 2001, following an accusation that Plaintiff had pushed a tray onto one of the staff members, Defendant Hochstetler placed Plaintiff on a cabbage diet; then, following a complaint by a nurse that hand feeding Plaintiff had become too "cumbersome," Defendant Hochstetler directed his nurses to stop hand feeding Plaintiff for a couple of days; and, finally, after Plaintiff became verbally abusive toward Defendant Hochstetler, going "ballistic" on him (as Plaintiff puts it), Defendant Hochstetler decided to lengthen the term of that hand-feeding prohibition.[110]

Regardless of what prompted Defendants Hochstetler and Gardella to stop the hand feeding that they had occasionally been providing to Plaintiff between February and April of 2001, the fact remains that their medical judgment (that Plaintiff did not have to be hand fed, as a matter of medical necessity) was supported by several medical opinions.  Granted, Plaintiff's position that he needed hand feeding was also supported by certain medical opinions.  However, what those differing medical opinions leave us with is a disagreement regarding what medical care Plaintiff should have appropriately received.  As explained above in Part II.A.2. of this

---

argumentative and hostile towards staff.  Again, he demeans and accuses other staff members of not caring for his medical needs, calls staff members racists, bitches, etc. . . .  Mr. Shomo will not make any attempts to help himself."].)

[109]   (*Id.*; *see also*, *infra*, note 106 of this Report-Recommendation.)

[110]   (Dkt. No. 72, Part 4, at 59, 70-71, 83, 220-221 [Ex. A to Finkelstein Decl., attaching transcript of Plf.'s deposition]; Dkt. No. 72, Part 9, at 726 [Ex. A to Howard Decl., attaching Plaintiff's "Progress Notes" dated 4/21/01].)

Report-Recommendation, such a disagreement is not actionable under the Eighth Amendment.[111]

Defendants Hochstetler and Gardella were compelled (by Plaintiff's conflicting medical records)

to make a professional judgment, and they did so.  If that judgment was incorrect, they may

conceivably be liable for medical malpractice or negligence.  But they are not liable for the sort

of criminal recklessness prohibited by the Eighth Amendment.  I remind Plaintiff of what the

Second Circuit once observed about the level of medical care that is required by the Eighth

Amendment (quoted above): "Common experience indicates that the great majority of prisoners

would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[] . . .

seeks." *Dean*, 804 F.2d at 215.

Finally, I note that Plaintiff has failed to offer any argument specifically regarding

Defendants Allen and Memheart.[112]  As explained above in Part II.A.4. of this Report-

Recommendation, by not responding to the Corporate Defendants' argument that Plaintiff has

failed to allege facts indicating, or adduce evidence establishing, that Defendants Allen and

Memheart acted with the requisite state-of-mind to be liable under the Eighth Amendment,

Plaintiff has "consented" to that argument.  Thus, the only remaining issue is whether the

Corporate Defendants' have met their modest, threshold burden "to demonstrate entitlement to

the relief requested" through that argument.  I find that the Corporate Defendants have met that

---

[111]     *See*, *supra*, note 64 of this Report-Recommendation (citing *Chance v. Armstrong*, 143 F.3d 698, 703 [2d Cir. 1998]).

[112]     To the extent that Plaintiff intended any of his other state-of-mind arguments to implicitly apply to Defendants Allen and Memheart, Plaintiff is advised that I have already considered, and rejected, those arguments above in Part II.A.2. of this Report-Recommendation.

modest, threshold burden for the reasons stated in their Memorandum of Law.[113]  I would add

that, even if I were to *sua sponte* scour the record for any proof of a question of fact regarding

Plaintiff's claims against Defendants Allen and Memheart, I would reach the same conclusion.  I

note that various facts asserted by the Corporate Defendants regarding the treatment they

provided to Plaintiff (and the services they were not required to provide to him) are supported by

the record and are not specifically controverted by Plaintiff.[114]

      As a result, I recommend that the Court dismiss Plaintiff's claim against the Corporate

Defendants under the Eighth Amendment on the ground that Plaintiff has failed to adduce facts

establishing that the Corporate Defendants acted with deliberate indifference to Plaintiff's

medical needs.  Because I find that the Corporate Defendants' first argument (i.e., regarding

deliberate indifference) has merit, I need not, and do not, reach the merits of their second

argument (i.e., regarding personal involvement).

---

[113]     (Dkt. No. 73, Part 8, at 2-6 [Corporate Defs.' Mem. of Law].)

[114]     (*Compare* Dkt. No. 73, Part 7, ¶¶ 12, 13 [Corporate Defs.' Rule 7.1 Statement] *with* Dkt. No. 79, Part 2, ¶¶ 23-32 [Plf.'s Rule 7.1 Response to Corporate Defs.' Rule 7.1 Statement, not specifically controverting Paragraphs 12 and 13 of that Rule 7.1 Statement]; *see also* Dkt. No. 79, Part 2, ¶ 28 [Plf.'s Rule 7.1 Response to Corporate Defs.' Rule 7.1 Statement, not responding to the bulk of the facts asserted in Paragraph 14 of the Corporate Defs.' Rule 7.1 Statement, and only arguing that a product catalogue shows that the bowl provided to him was not "'specifically designed' to aid him," although the Corporate Defs. did not assert that fact but that the bowl was "specially shaped" and was "provided . . . to assist him"]; Dkt. No. 79, Part 2, ¶ 30 [Plf.'s Rule 7.1 Response to Corporate Defs.' Rule 7.1 Statement, not specifically controverting the fact asserted in Paragraph 16 of the Corporate Defs.' Rule 7.1 Statement with a citation to record evidence, but only offering a legal argument, which is insufficient to create a question of fact].)

## 2.      **Exhaustion of Administrative Remedies**

Essentially, the Corporate Defendants offer a two-part argument with regard to Plaintiff's

administrative remedies: (1) administrative remedies were in fact available to Plaintiff at his

correctional facility, no Corporate Defendant inhibited Plaintiff's ability to utilize the prison

grievance procedures in place at Plaintiff's correctional facility, and no "special circumstances"

exist excusing Plaintiff's failure to exhaust his administrative remedies; and (2) Plaintiff

attempted to appeal only one grievance to DOCS' Central Office Review Committee, and that

grievance was rejected due to Plaintiff's failure to follow the proper procedures.[115]  Generally,

Plaintiff responds that he has in fact exhausted his available administrative remedies, as

evidenced by the record documents attached to his Complaint.[116]

Because I have found that adequate grounds exist upon which to base a recommendation

that the Court dismiss Plaintiff's claims against the Corporate Defendants (*see*, *supra* and *infra*,

Parts II.B.1., II.B.3., and II.B.4. of this Report-Recommendation), I need not, and I do not, reach

the merits of this argument, other than to make the following observation.  The Corporate

Defendants' summary of Plaintiff's grievances appears accurate and supported by the record.

(*Compare* Dkt. No. 73, Part 2, ¶¶ 18-28 [Young Affid.] *with* Dkt. No. 1, Part 2 [Exs. 1-25 to

Plf.'s Compl.].)  As a result, it appears from the current record that Plaintiff did not in fact

exhaust his available administrative remedies with regard to his claims against the Corporate

Defendants.  (*See generally* Dkt. No. 1, Part 2 [Exs. 1-25 to Plf.'s Compl.].)

---

[115]        (Dkt. No. 73, Part 8, at 6-9 [Corporate Defs.' Mem. of Law].)

[116]        (Dkt. No. 79, Part 1, at 30 [Plf.'s Mem. of Law, citing pages 22-24, 29 and 31 of
Dkt. No. 73, Part 2 (Ex. C to Young Affid.), which does not actually attach the pages but
incorporates them by reference to Exhibits 8, 9, 10, 14, and 16 to Plaintiff's Complaint].)

### 3.      Claim under ADA or RA

The Corporate Defendants next argue that Plaintiff's claim under the ADA and the RA

must be dismissed, because (1) individual defendants such as Defendants Hochstetler, Gardella,

Allen and Memheart cannot be liable under either the ADA or the RA, (2) Plaintiff fails to allege

facts indicating that the Corporate Defendants were motivated by discriminatory animus or ill

will due to disability, and (3) Plaintiff fails to allege facts indicating, and/or adduce evidence

establishing, that he exhausted his administrative remedies before filing his ADA and RA claim

in federal court.[117]

Plaintiff responds to only the Corporate Defendants' *first* and *third* arguments.[118]

Plaintiff fails to offer any argument  regarding the Corporate Defendants' *second* argument.  As

explained above in Part II.A.4. of this Report-Recommendation, by not responding to the

Corporate Defendants' argument that Plaintiff has failed to allege facts indicating that the

Corporate Defendants were motivated by discriminatory animus or ill will due to disability,

Plaintiff has "consented" to that argument.  Thus, the only remaining issue is whether the

Corporate Defendants' have met their modest, threshold burden "to demonstrate entitlement to

the relief requested" through that argument.  I find that the Corporate Defendants have met that

modest, threshold burden for the reasons stated in their Memorandum of Law,[119] and for the

reasons stated above in Part II.A.3. of this Report-Recommendation.

In the alternative, I find that Plaintiff has also consented (rather expressly) to the

---

[117]      (Dkt. No. 73, Part 8, at 10-11 [Corporate Defs.' Mem. of Law].)

[118]      (Dkt. No. 79, Part 1, at 30 [Plf.'s Mem. of Law].)

[119]      (Dkt. No. 73, Part 8, at 10-11 [Corporate Defs.' Mem. of Law].)

Corporate Defendants' *first* argument (i.e., that individual defendants such as Defendants Hochstetler, Gardella, Allen and Memheart cannot be liable under either the ADA or the RA).[120] Furthermore, with regard to that argument, the Corporate Defendants have met their modest, threshold burden for the reasons stated in their Memorandum of Law.[121]  *See also Atkins v. County of Orange*, 251 F. Supp.2d 1225, 1233 (S.D.N.Y. 2003) ("Because . . . the ADA [and the RA] provide[] redress to disabled individuals for discrimination by a public entity, individuals may not be sued [under those statutes].") [citations omitted].  As a result, an additional, independent ground exists for dismissing Plaintiff's ADA and RA claim against Defendants Hochstetler, Gardella, Allen and Memheart.

As a result, I recommend that the Court dismiss Plaintiff's claim against the Corporate Defendants under the ADA and the RA on the ground that Plaintiff has failed to allege facts indicating that the Corporate Defendants violated either the ADA or RA.  I note that a similar conclusion (that Plaintiff's ADA and RA factual allegations fail to state a claim) was reached by the Southern District of New York in *Shomo v. Myers*, 03-CV-10213, 2005 WL 7564834, at *6 (S.D.N.Y. Apr. 4, 2005) ("I decline to adopt the statute of limitations analysis . . . for [Plaintiff's claim under the ADA and RA], . . . because Shomo clearly lacks a cause of action under either statute.").

---

[120]     (Dkt. No. 79, Part 1, at 30 [Plf.'s Mem. of Law].)

[121]     (Dkt. No. 73, Part 8, at 10 [Corporate Defs.' Mem. of Law].)

**4.      Claim Under 42 U.S.C. § 1981**

Finally, the Corporate Defendants argue that Plaintiff's claim under 42 U.S.C. § 1981 must be dismissed because (1) Plaintiff fails to allege facts indicating that the Corporate Defendants discriminated against him because of his race, and (2) Plaintiff fails to allege facts indicating, and/or adduce evidence establishing, that he exhausted his administrative remedies before filing his Section 1981 claim in federal court.[122]

Plaintiff responds to only the Corporate Defendants' *second* argument.[123]  Plaintiff fails to offer any argument  regarding the Corporate Defendants' *first* argument.  As explained above in Part II.A.4. of this Report-Recommendation, by not responding to the Corporate Defendants' argument that Plaintiff has failed to allege facts indicating that the Corporate Defendants discriminated against him because of his race, Plaintiff has "consented" to that argument.  Thus, the only remaining issue is whether the Corporate Defendants' have met their modest, threshold burden "to demonstrate entitlement to the relief requested" through that argument.  I find that the Corporate Defendants have met that modest, threshold burden for the reasons stated in their Memorandum of Law.[124]

Moreover, even if I were to examine the Corporate Defendants' argument in depth, and I were to independently scour the record for any proof of a factual dispute, I am confident that I would reach the same conclusion.  The Corporate Defendants are indeed correct that 42 U.S.C. §

---

[122]      (*Id*. at 11.)

[123]      (Dkt. No. 79, Part 1, at 30 [Plf.'s Mem. of Law].)

[124]      (Dkt. No. 73, Part 8, at 11 [Corporate Defs.' Mem. of Law].)

1981 prohibits only discrimination that is motivated by *racial* animus,[125] and I have found no allegation that any of the Corporate Defendants took adverse actions against Plaintiff because of his race.[126]

As a result, I recommend that the Court dismiss Plaintiff's claim against the Corporate Defendants under 42 U.S.C. § 1981 on the ground that Plaintiff has failed to allege facts indicating that the Corporate Defendants discriminated against him because of his race.

### 5.    Claims Under 42 U.S.C. §§ 1984, 1985, 1986, and 2000d

Finally, for the reasons stated above in Part II.A.5. of this Report-Recommendation, I recommend that the Court *sua sponte* dismiss Plaintiff's other civil rights claims against the Corporate Defendants (i.e., those claims occurring under 42 U.S.C. §§ 1984, 1985, 1986, and 2000d) on the ground that Plaintiff has failed to allege facts indicating that the Corporate Defendants violated any of those civil rights statutes.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's request to file a sur-reply with regard to Defendants' motions for summary judgment (Dkt. No. 88) is **<u>DENIED</u>**, and the Clerk's Office is directed to **<u>STRIKE</u>** from the docket pages 2 through 5 of Plaintiff's request, which attaches his sur-reply (Dkt. No. 88); and it is further

**RECOMMENDED** that the State Defendants' motion for summary judgment (Dkt. No. 72) be **<u>GRANTED</u>**; and it is further

---

[125]    *See* 42 U.S.C. § 1981(a) ("All persons . . . shall have the same right to . . . equal benefit of all laws . . . as is enjoyed by white citizens . . . .").

[126]    (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

**RECOMMENDED** that the Court *sua sponte* dismiss Plaintiff's claim against the State Defendants under 42 U.S.C. §§ 1984, 1985, 1986 and 2000d on the ground that Plaintiff has failed to allege facts indicating that the State Defendants violated any of those statutes; and it is further

**RECOMMENDED** that the Corporate Defendants' motion for summary judgment (Dkt. No. 73) be **GRANTED**; and it is further

**RECOMMENDED** that the Court *sua sponte* dismiss Plaintiff's claim against the Corporate Defendants under 42 U.S.C. §§ 1984, 1985, 1986 and 2000d on the ground that Plaintiff has failed to allege facts indicating that the Corporate Defendants violated any of those statutes.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 6, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge